# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12 C 02923 |
| v. ) | |
| ) | |
| VALUE CITY FURNITURE, et al. ) | Judge John J. Tharp, Jr. |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gerald Howard alleges that his employer, Value City Furniture, and his supervisor, Klint Duvall, discriminated against him on the basis of his race (African American) and subjected him to racial harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964. Value City Furniture moves for summary judgment on all counts of Howard's complaint. The Court grants Value City Furniture's motion in its entirety.

## I.  BACKGROUND

### A. Howard's Local Rule 56.1(b)(3) Response and Statement of Additional Facts

The Court must first address Howard's failure to comply with Northern District of Illinois Local Rule 56.1, which provides litigants with instructions and procedures for properly filing and responding to motions for summary judgment. Under Rule 56.1(a), a party seeking summary judgment must file with its motion "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. L.R. 56.1(a)(3). The defendants properly filed a Rule 56.1(a)(3) Statement of Undisputed Material Facts (Dkt. 31).

A party opposing summary judgment must comply with Local Rule 56.1(b), which requires:

> a concise response to the movant's statement that shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and ... a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

N.D. Ill. L.R. 56.1(b)(3)(A)-(C).

As the defendants point out, Howard has failed to comply with these requirements. First, Howard has not responded—with a response to each numbered paragraph in the moving party's statement—to the defendants' Statement of Undisputed Facts. Instead, Howard submitted a document which he titled "Rule 56.1(a)(3) Statement of Undisputed Facts" (Dkt. 54); it sets forth additional facts which Howard adds are "in contrast to the Defendants' Statement of [F]acts." The reference to Rule 56.1(a)(3) is improper; Howard is not the moving party. Putting aside the title for the moment, Howard's submission appears to combine additional facts and responses to ("in contrast to") the defendants' facts. This is improper, as well. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008) (affirming district court's refusal to consider plaintiff's submission because it simultaneously denied defendant's facts and presented additional facts). Local Rule 56(b)(3) requires a party opposing a summary judgment motion to file "a concise response to the movant's statement" that includes a response to each numbered paragraph in the moving party's statement and a statement of separately numbered paragraphs setting forth any additional facts, and supporting citations to record evidence, on which the party relies. The plaintiff's submission is also improper because it is replete with legal conclusions, unsubstantiated "facts," and argument, as well as citations to affidavits that are themselves

unsubstantiated. *See Ciomber*, 527 F.3d at 644 (affirming district court's disregard of long, argumentative paragraphs).

District courts are "entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trust.*, 233 F.3d 524, 527 (7th Cir. 2000)). Even "[s]ubstantial compliance is not strict compliance." *Id.* Further, district courts are not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Smith v. Lamz et al.*, 321 F.3d 680, 683 (7th Cir. 2003) (quoting *Bordelon*, 233 F.3d at 529). It is not too much to expect counsel to comply with straightforward procedures, clearly outlined in the rules; the alternative is to require courts to devote more time and resources to ferreting out factual information with which the parties are far more familiar, thereby delaying the resolution of not only the pending motion in this case, but also the pending motions in all of the other cases before the Court. These rules are not arbitrary; they are here for a reason: to improve the quality of justice for all litigants. If attorneys are permitted to ignore them, everyone will pay the price. The Court, therefore, declines to consider Howard's submission at Dkt. 54.

Because Howard has not responded properly to the defendants' Statement of Undisputed Facts, the defendants' facts are deemed admitted to the extent they are supported by admissible record evidence. The facts asserted by Howard are disregarded. *See Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed." (citation omitted)).

The Court nonetheless views the defendants' admitted facts in the light most favorable to Howard, the non-moving party, and draws all reasonable inferences in Howard's favor. *See Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

### B. Relevant Facts[1]

American Signature, Inc., d/b/a Value City Furniture, has 126 retail furniture stores in the United States, and 12 stores in Illinois. Def.'s Facts (Dkt. 31) ¶ 1. Howard worked at the Calumet City store from October 2006 until September 2011 as a Home Furnishing Consultant (HFC). *Id.* ¶¶ 10, 12. He reported to the general manager of the store, Klint Duvall. *Id.* ¶ 3. Howard's job was to sell furniture to customers; he was paid with commissions, which were a percentage of the proceeds from his successful sales. *Id.* ¶¶ 11, 13. In general, commissions at Value City Furniture are unpredictable because they are tied to individual customer desires and luck of the draw; one customer may simply browse, another may purchase a lamp, another may purchase an entire bedroom set. *Id.* ¶ 16. Once a sale is made, an HFC works with a cashier to finalize the purchase. *Id.* ¶ 17.

#### 1. Howard's transfer to the Burbank store.

If an employee wishes to transfer between Value City Furniture stores, the employee must tell the general manager of his current store that he is interested in the transfer. The general manager can then choose to recommend the employee to the general manager of the store the employee requests. The receiving general manager has the discretion to accept or reject the transfer. *Id.* ¶ 33.

---

[1] The following facts are drawn from the defendants' Local Rule 56.1(a)(3) Statement of Undisputed Material Facts. Dkt. 31.

In July 2010, Howard expressed an interest in transferring from the Calumet City store to the store in Burbank, Illinois. *Id.* ¶ 45. Howard wished to transfer because the Burbank store had a higher volume of sales than the Calumet City store at the time; Howard believed that a higher sales volume would translate into higher commissions. *Id.* ¶ 32. Duvall informed Joe Gagne—the Burbank general manager—that he recommended Howard for a transfer. *Id.* ¶¶ 34, 46.

In July 2010, however, Mr. Gagne had already interviewed and offered an HFC position to Anthony Alvarez, an experienced furniture salesman who was scheduled to begin work at the Burbank store on July 16, 2010. Consequently, Mr. Gagne did not have an opening for an HFC position. Gagne Aff. ¶ 5; Def.'s Facts ¶ 46.

In April 2011, Duvall again voiced his support to Gagne for Howard's transfer. Gagne agreed to the transfer. *Id.* ¶ 47. But a second delay intervened: a company-wide reduction-in-force and cost-savings plan, which included the elimination of HFC positions in over 75 stores between April and May of 2011. *Id.* ¶¶ 48, 49. In particular, the Burbank store was required to institute a freeze of all hiring and pending transfers, and to reduce the store's staff by one employee. *Id.* ¶¶ 49, 50, 52. Gagne told Howard that he could not be transferred to the Burbank store because of the reduction-in-force. *Id.* ¶ 53.[2] Howard, however, believes the transfer was delayed because he refused to apologize to a coworker for an incident that occurred a month or so earlier.

### 2. The winter 2011 incident.

---

[2] Duvall was not part of the decision to freeze hiring and transfers at the Burbank store. *Id.* ¶ 51. Gagne made all hiring decisions at the Burbank store. *Id.* ¶ 68.

In February or March of 2011,[3] while Howard still worked at the Calumet City store, Howard was in line to process a purchase for a customer. *Id.* ¶ 18. The cashier at that moment was Carrie Lockhart, a Caucasian woman. *Id.* Also in the line was Larry Hamm, another HFC at the Calumet City store. *Id.* A conversation ensued between Hamm and Howard, in which Hamm stated, "look at the line, poor Carrie." *Id.* Howard then stated, "You didn't say that when Syvella was up there, a black woman." *Id.* ¶ 19. According to Howard, the conversation continued:

> And so he said, don't go there. I said, what do you mean don't go there. I said that's the truth, you didn't say it when a black woman was up there, but all of the sudden Carrie is so important. And so he said – he threatened me, he said, if you say that again I'm going to go to the office. I told him he can go to hell.

*Id.* ¶ 20. Hamm reported the incident to Duvall. *Id.* ¶ 21; Dkt. 56-3 at 2. Duvall asked Howard about it, and Howard admitted that he made the comments and that they may have been inappropriate. Def.'s Facts ¶ 22 (citing Howard Dep. Ex. 2 (Dkt. 29-1) at 68). Duvall then asked Howard to apologize to Hamm, but Howard refused. *Id.* Instead, Howard wrote a statement describing the incident and raising a complaint about Hamm—namely, that Hamm had called Howard a "black son of a bitch" at a workplace barbeque in September 2010. *Id.* ¶¶ 23, 27. Howard admitted, however—in both his statement and at his deposition—that he considered Hamm to be a friend, that he considered the alleged name-calling to be a joke, and that he had not been offended by the comment. *Id.* ¶¶ 23, 28. In his statement, Howard wrote, "We both laughed about it … I never considered that a racist slur …." *Id.* ¶ 24. Duvall later met with Howard and Hamm and emphasized the company's policies against discrimination, reminding both men that discrimination was a violation of company policy and that any comments that

---

[3] The defendants' statement of facts recites the date of this incident as March 10, 2011. Def.'s Facts ¶ 18. Hamm's handwritten complaint addressed to Klint Duvall refers to the date of the incident as February 18, 2011. Dkt. 56-3 at 2. Howard's handwritten statement (dated March 10, 2011) also refers to the date of the incident as February 18, 2011. Dkt. 56-3 at 4.

could be considered discriminatory could result in discipline up to and including termination. *Id.* ¶ 25. Duvall also provided Howard and Hamm with a copy of the company's harassment policy. *Id.*

Howard did not complain about Hamm to anyone else or at any other time. *Id.* ¶ 26. This is the only incident that Howard considered to be "harassment" and the only incident about which Howard complained to anyone in management. *Id.*[4]

### 3. Howard's discrimination charges.

On August 2, 2011, Howard filed a charge of discrimination with the EEOC, stating that he was "subjected to different terms and conditions of employment, including, but not limited to, being [] denied [a] transfer." Dkt. 5 at 6. He added that he was "subjected to racial harassment and [he] complained to Respondent" and that he "believe[d] he [was] discriminated against because of [his] race, Black, and in retaliation for engaging in protected activity …." *Id.* The EEOC, finding that it was unable to conclude that the information Howard offered established a violation of Title VII, issued a right-to-sue letter on January 24, 2012. *Id.* at 7.

On August 26, 2011, an HFC at the Burbank store was terminated. Def.'s Facts ¶ 55. On September 16, 2011, Howard was transferred to the Burbank store. *Id.* ¶ 56. He had the same title (HFC), duties, pay structure, and benefits as he received at the Calumet City store. *Id.* ¶ 58. In 2010, Howard earned on average $40.33 per hour at the Calumet City store. *Id.* ¶ 60. In 2011, Howard earned on average $37.96 per hour at the Calumet City store and once transferred, he

---

[4] Howard testified in his deposition about an incident in which Howard's coworker, Adam Defarno, allegedly told Howard "They don't want your black ass over there, they ain't fitting to hire your black ass" in reference to his delayed transfer to the Burbank store. Def.'s Facts ¶¶ 29-30. He lodged no complaint concerning this incident, however, and does not argue in his response brief that this incident supports his harassment claim.

earned on average $28.24 per hour at the Burbank store. *Id.* ¶ 61. In 2012, Howard earned on average $40.84 per hour at the Burbank store. *Id.* ¶ 62.

Howard was the first hire at, or transfer to, the Burbank store since Anthony Alvarez in July 2010. *Id.* ¶ 46.[5] As of February 28, 2013, the date on which the defendants filed their motion for summary judgment, Howard continued to work at the Burbank store. *Id.* ¶ 12.

## II. ANALYSIS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate when "the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (citation omitted).

### A. Race Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Howard may proceed under either the direct method of proof or the indirect burden-shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*

---

[5] Howard claims in his brief that "the Burbank store hired four white employees during the time Plaintiff had requested his promotion." Pl. Resp. at 4. During his deposition, however, he testified only that several individuals had been transferred to Burbank *before* Alvarez; he did not testify (or provide any other evidence) that anyone began working at the Burbank store between July 2010 and September 2011, when he was transferred. *See* Howard Dep. at 81:22-23.

8

*Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). Howard has not indicated which method he is using.

Under the direct method of proof, Howard must present "direct or circumstantial evidence that creates a convincing mosaic of discrimination on the basis of race," *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 674 (7th Cir. 2012) (citation omitted), that "motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Under the indirect method of proof, Howard must show that (1) he is a member of a protected class; (2) his job performance met Value City Furniture and Duvall's legitimate expectations; (3) he suffered an adverse employment action; and (4) Value City Furniture and Duvall treated similarly situated individuals outside of Howard's protected class more favorably. *See Egonmwan v. Cook Cnty. Sheriff's Dep't.*, 602 F.3d 845, 850 (7th Cir. 2010). If Howard establishes all four elements, the burden shifts to Value City Furniture and Duvall to offer a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* If the defendants meet this burden, Howard must then demonstrate that the proffered reasons are pretext for discrimination. *See id.* at 849-50.

Here, Howard cannot get out of the gate under either the direct or indirect method, both of which require evidence that Howard suffered an adverse employment action. The delay of Howard's transfer from the Calumet City store to the Burbank store was not an adverse employment action. In *Haywood v. Lucent Tech.*, *Inc.* the Seventh Circuit held that an employee "must be able to show a quantitative or qualitative change in the terms or conditions of employment" to establish an adverse employment action. 323 F.3d 524, 532 (7th Cir. 2003) (also noting that "mere unhappiness and inconvenience are not actionable under Title VII."). Where the employee's duties, responsibilities, compensation, and benefits remain the same, and the plaintiff does not otherwise allege that a delay in obtaining a transfer affected his opportunities

9

or delayed his career, a claim of race discrimination cannot stand. *Id.* ("the uncertainty [the employee] experienced while waiting for her transfer may have been unpleasant, but it was not severe enough to constitute an adverse employment action.").

Howard's transfer was delayed for approximately 14 months, from July 2010 until September 2011. Def.'s Facts ¶¶ 45, 56. Howard was ultimately transferred to the Burbank store, where he worked as a Home Furnishing Consultant, the same position he held at the Calumet City store before his transfer. *Id.* ¶ 58. He had the same duties, the same pay structure, and the same benefits as he received at the Calumet City store. *Id.* Howard argues in his response brief (Dkt. 56) that the Burbank transfer was a promotion, and the loss of that purported promotion (his "promotion opportunity (transfer)" was "taken away" in his words) was an adverse employment action. Pl. Resp. at 3, 6.[6] As to the latter point, Howard did not lose the transfer at all; he was transferred to the Burbank store on September 16, 2011. Def.'s Facts ¶ 56. Moreover, the transfer was not a promotion, as the defendants' facts (which are deemed admitted) explain. *Id.* ¶¶ 58-59 (describing same title, duties, pay structure and benefits, as well as possibility of making fewer commissions and Howard's lower earnings at Burbank store compared to Calumet City store).

Howard has not shown a "quantitative or qualitative change in the terms or conditions of employment." *Haywood*, 323 F.3d at 532. In other words, he has not shown that he suffered an adverse employment action—the third prima facie element—and accordingly his discrimination

---

[6] Howard also argues that a "Corrective Action Report" regarding the winter 2011 incident, which was submitted with Howard's response brief, shows an adverse employment action. Pl.'s Resp. at 3. A disciplinary report is not akin to an adverse employment action if it does not result in a tangible job consequence. *See Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (negative performance evaluations are not adverse employment actions actionable under Title VII). In Howard's case, he has not shown that the report had any consequences.

claim cannot succeed. Summary judgment in the defendants' favor on Howard's race discrimination claim is therefore warranted.

### B. Racial Harassment

To prove a claim for racial harassment, Howard must show that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive working environment that seriously affected his psychological well-being; and (4) there is a basis for employer liability. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004) (citing *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004)). Further, Howard must establish that the harassing words or conduct were "severe or pervasive." *See id.* (citing *Hrobowski*, 358 F.3d at 476).

It is clear that Howard has established none of the required elements to avoid summary judgment on this claim. To begin, it is not even clear what his claim of racial harassment comprises. In his complaint, Howard checked a box accusing the defendants of "fail[ing] to stop harassment" and in his list of "facts supporting [his] claim of discrimination," he included "harassment." Dkt. 5 at 4-5. In his EEOC charge, Howard wrote, "I was subjected to racial harassment and I complained to Respondent." *Id.* at 6. Howard explains in his brief in opposition to the defendants' summary judgment motion that he was "subjected to a hostile work environment when he had to endure racial slurs, which were supposed to be a joke, on a continuous basis." Pl.'s Resp. at 7.

Assuming Howard's claim of racial harassment refers to Howard's claim that Larry Hamm called Howard a "black son-of-a-bitch," this comment is far from sufficient to establish racial harassment. Howard admitted at his deposition that he considered Hamm's comment to be

a joke; that they both laughed about it at the time; that he "didn't take offense to it"; and that he never considered the reference to be a racist slur. Howard Dep. (Dkt. 29-1) at 24:19-25:7. In other words, Howard has not shown that the purported harassment was "unwelcome," as required by Seventh Circuit case law. *See Herron*, 388 F.3d at 302.

Nor would a single comment by a co-worker suffice to establish a claim of racial harassment. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004) (considering frequency of conduct and holding that isolated comments were insufficient to show a severe or pervasive work environment). Howard claimed during his deposition and in his response brief that there were other incidents of harassment, but he has failed to adduce any evidence in support of that claim (even in his purported response to the defendants' statement of facts). For example, in his response brief, Howard asserts that Hamm and Duvall "would continue to remind the Plaintiff that he was nothing more than a black[] son-of-a-bitch who better not talk back to white folks or you will be punished," Pl. Br. at 7, but this is hyperbole unsupported by evidence. Howard never testified that Hamm or Duvall said any such thing; rather, he testified in his deposition that "Larry been calling me [black son-of-a-bitch], he says it at the lunchroom table … there were a number of times that he said it." Howard Dep. at 24:3-9. But Howard also admitted that he had never complained about any other conduct by Hamm, and offered no specifics regarding any other incident. *Id.* at 23:20-24; 25:17-26:3. Similarly, Howard testified in his deposition that "Klint engages in discrimination every day," Howard Dep. at 25:22-23, but he provided no information whatsoever about what Duvall supposedly did, to whom, or when he did it. These unsupported, conclusory statements, fall far short of establishing that Howard endured harassment severe enough to constitute a hostile work environment. *See, e.g., Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) (claim that defendant made hostile comments on a "regular"

12

basis rejected where plaintiff "provides no detail on the regularity and so we cannot consider the few comments detailed in the briefs to be pervasive").

Not surprisingly, in view of his failure to adduce evidence sufficient to support a claim that he was harassed, Howard has also failed to present evidence that his working environment was so hostile that it unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive working environment that seriously affected his psychological well-being. *See Herron*, 388 F.3d at 302. All of these shortcomings require granting the defendants' summary judgment motion as to the harassment claim as well.

### C. Retaliation

Finally, Howard raises a claim for retaliation "for engaging in protected activity." Dkt. 5 at 4, 6. Title VII makes it unlawful for an employer to discriminate against an employee because the employee "oppose[s] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The direct method "requires proof that (1) the employee engaged in a statutorily protected activity; (2) [the employee] suffered an adverse employment action; and (3) a causal link exists between the two." *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013) (citing *Nichols v. S. Ill. Univ. Edwardsville*, 510 F.3d 772, 784-85 (7th Cir. 2007)). To establish a causal link, Howard must show that his purported protected activity was a "substantial or motivating factor" in the adverse employment action. *See Milligan v. Bd. or Trs. of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). The indirect method requires proof that (1) the employee engaged in a statutorily protected activity; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Majors*, 714 F.3d at 537. Howard again does not indicate which method he is using.

Whether or not Howard engaged in a statutorily protected activity by complaining about Hamm's comment (this is highly doubtful because Hamm's comment did not refer, even implicitly, to race), Howard's claim again falls flat under either the direct or indirect method because he has not shown that he suffered an adverse employment action. An adverse employment action under Title VII's retaliation provision must be "materially" adverse. *See Brown v. Advocates South Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012) ("it is important to separate significant from trivial harms"). In essence, "an action is only adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 1106-07.

In July 2010, Howard first requested the transfer (and Duvall supported the request); in winter of 2011, Howard complained about Hamm's comment in the cashier line; in April 2011, Duvall supported Howard's transfer again; and in September 2011, Howard was transferred. Def.'s Facts ¶¶ 23, 45, 46, 47, 56. As discussed above in Section A, the delay by itself was not materially adverse; Howard has not shown a "quantitative or qualitative change in the terms or conditions of employment." *Haywood*, 323 F.3d at 532. Given that his duties, responsibilities, compensation, and benefits remained the same, and he did not otherwise allege that the delay affected his opportunities or delayed his career, the delay was not severe enough to rise to the level of an adverse employment action. *Id.*

Further, even if the delayed transfer were an adverse employment action, Howard has not demonstrated that there was a causal link between the delay and his filing of a discrimination charge, as required by the direct method of proof.[7] For starters, most of the "delay" Howard

---

[7] Under the indirect method, Howard makes no attempt to show that he was treated less favorably than similarly situated employees who did not engage in statutorily protected, so his claim would fail under the indirect method, as well.

complains of occurred between July 2010 and March 2011—*before* Howard ever complained about Hamm's allegedly racist comment. Howard, moreover, believes (as shown by the defendants' admitted facts) that his transfer was delayed because Howard "refused to apologize" to Hamm, not because of Howard's purported protected activity—complaining about Hamm's comment in the cashier line. Def.'s Facts ¶ 54; *see* Howard Dep. at 30:11-15 ("Q: And you believe—you've mentioned you believe that that transfer was taken away because of your complaint? A: Correct—I mean because I did not apologize."). There is simply no evidence connecting the timing of the transfer—which occurred as soon as there was an open position at the Burbank store—to Howard's complaint about Hamm's comment in the cashier line.

For these reasons, the defendant's motion for summary judgment must be granted as to Howard's retaliation claim under Title VII.

### D. Klint Duvall

As the defendants' point out, Klint Duvall, the general manager of the Calumet City store where Howard worked, cannot be held individually liable for purposes of Title VII. *See Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) (agents are not individually liable under Title VII); *see also Smith v. Bray*, 681 F.3d 888, 896 n.2 (7th Cir. 2012) (noting that under *Williams*, Title VII "authorizes suit only against the employer as an entity rather than against individual people who are agents of the employer"). Accordingly, Howard's claims against Duvall do not survive summary judgment.

\* \* \* \* \*

For the reasons stated above, the Court concludes that Howard has failed to offer sufficient evidence to survive summary judgment on his claims for race discrimination, racial

15

harassment, and retaliation. The defendants' motion for summary judgment is therefore granted in its entirety.

Entered: March 25, 2014

_____

John J. Tharp, Jr.
United States District Judge